A. F. REIS, Appellee, v. MINNEAPOLIS & ST. LOUIS RAILWAY
COMPANY, Appellant.

**CARRIERS:** Damage to Baggage Left on Depot Platform. One
1 who, late in the day, places his baggage on a railway depot
platform, preparatory to checking it for carriage on a train
leaving on the following morning, is neither a trespasser nor
a mere licensee, and may recover damages to such baggage on
a showing that such damage was caused by the negligent man-
ner in which the company maintained the premises.

**NEGLIGENCE:** Jury Question on Undisputed Facts. Undisputed
2 facts attending an injury present a jury question, when differ-
ent conclusions may be drawn therefrom.

*Appeal from Marshall District Court.*—JAMES W. WILLETT,
Judge.

OCTOBER 4, 1920.

ACTION at law to recover damages for injury to baggage.
There was a verdict and judgment for plaintiff, and defend-
ant appeals.—*Reversed and remanded.*

*C. H. E. Boardman,* for appellant.

*E. N. Farber,* for appellee.

WEAVER, C. J.—The plaintiff is a traveling salesman, and
defendant, a common carrier of passengers and baggage on
a line of railway passing through the city of Hampton,
Iowa. At its station in Hampton, it main-
tained, on the date in question, the usual
platform, upon which was a depot building.
Near at hand, it also maintained a water
tower, or elevated tank. Near the close of

the day, July 6, 1915, plaintiff, carrying three sample cases and a grip, arrived at Hampton, over the defendant's road, intending to take another of the company's trains in the morning, to another station on its line. Placing his baggage on the station platform, against the depot building, and intending to return and check it to his destination, he went to the post office, two or three blocks away, where he found mail awaiting him. Going back to the station, he stopped in the waiting room, to examine his mail. Thence he stepped into a restaurant near at hand, and, while eating a lunch, heard a loud crash, and, looking out, discovered that defendant's water tower had fallen, sending a very considerable flood of water over the station platform and around through the depot building. Investigation developed the fact that the flood had swept plaintiff's baggage away, to the material injury of the grip, sample cases, and their contents. This action was thereafter brought for the recovery of damages, on the theory that the fall of the tower and the resulting damage were occasioned by defendant's negligence in maintaining the structure in a dilapidated, weak, and dangerous condition. The defendant denies the charge of negligence, and denies that it was under any duty to care for or protect plaintiff's baggage. On the trial, the plaintiff introduced evidence showing the facts as above stated; also, that the water tower had, for a protracted period, been in a visibly weakened and defective condition, being "out of plumb," and leaning in the direction of the depot platform. The defendant offered no evidence in its own behalf, and, the parties having rested, it moved for a directed verdict. The motion was overruled, and a verdict directed in plaintiff's favor. The defendant appeals.

The theory of the defense and of the motion to direct a verdict in its favor was that the plaintiff was not a passenger, and that defendant owed him no duty as such; that the leaving of the baggage on the platform was an act of trespass; and that defendant was, therefore, under no duty to care for it, except to refrain from its wanton or willful injury.

The authorities called to our attention as to the nature of a carrier's duty to passengers, on the one hand, and to trespassers on the other, are undoubtedly correct, and appellant's statement of the rules applicable thereto may be conceded. The fundamental error in the argument is in its seeming assumption that, if plaintiff was not a passenger, with the rights pertaining to that relation, then he was, as a matter of course, a trespasser, with no rights other than those which protect trespassers generally against wanton injury. The very nature of the business of an ordinary railroad company implies and makes necessary meeting and intercourse between its officers and agents and the general public. At its stations, as a rule, are to be found its ticket offices and freight offices. Not infrequently in the same connection are found telegraph and express offices, for the public accommodation. Any person, though not at the instant a passenger or shipper, may lawfully go there for information as to rates and trains, or to meet friends or to accompany others about to depart, or to attend to any of the multitude of matters arising out of or pertaining to the business of railroad transportation. None of them may be able to claim the peculiar rights with which the law clothes a passenger or shipper, yet they are by no means trespassers or mere licensees. If a person intending to become a passenger, and wishing to avoid the hurry and confusion attendant upon the late checking of baggage, causes it to be taken to the station, and placed upon the platform somewhat in advance, intending to follow it and procure his checks, it would be a singular instance of gross injustice to hold that he is a trespasser, and that the company is under no obligation to exercise any degree of care for the safety of his property. It may be admitted that he is not yet a passenger, and that, until the baggage is accepted, the company is not yet charged with the duty of a carrier; but it will not do to say that, when a person intending to become a passenger has come upon the premises where the carrier solicits and transacts business with the public, and he is there for the purpose of perfecting arrangements by which he may be-

come a passenger and complete the delivery of his baggage to the carrier, he is entitled to no protection against the company's negligence.

It is not necessary to hold that a company upon whose platform goods or baggage is deposited for later shipment would be chargeable with liability in such case, if the property is stolen or otherwise lost or injured by the wrong or fault of some third person, or by other cause in no way attributable to its own act or negligence; but, if property which is lawfully there upon its own premises for delivery into its keeping—though such delivery is still incomplete— is destroyed because the premises so maintained for the transaction of such business are made dangerous by its own negligence, there can be no hardship in holding it to respond in damages.

Plaintiff's testimony is undisputed, that, having arrived at Hampton in the evening, and intending to depart on the same road in the morning, he proposed to avoid carrying his baggage to a hotel, by leaving it at the station, and having it checked to his destination; and this was not an unreasonable design. He did so leave it, and had returned to the station to accomplish that purpose, but had not yet completed the delivery by placing it in the hands of the agent and obtaining a check, when the fall of the tower occurred. From his arrival on defendant's train, the goods were at all times on its premises, for the purpose of further transportation. Had plaintiff been waiting at the station, to take a later train that evening, and left his baggage in the same place, while he stepped into the restaurant for a lunch, we apprehend there would be little contention against the validity of his claim for damages. We are unable to see that his intention to remain in town until morning materially alters the situation. He had returned to the station for the purpose of completing the delivery and checking of his baggage, when its injury, occasioned by the dangerous condition of the premises, intervened.

The only question remaining is whether the trial court erred in failing to submit the question of defendant's negli-

gence to the jury.   It is the opinion of the majority of the

court that, although there is no dispute as

2. NEGLIGENCE:   to the circumstances under which the injury
jury question
on undisput-   complained of was sustained, yet the conclu-
ed facts.
sion to be drawn therefrom is one of fact,

rather than of law, and the verdict should not have been
directed.

The judgment is therefore reversed, and the cause is re-
manded for a new trial.—*Reversed.*

LADD, EVANS, and STEVENS, JJ., concur.